UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA
CIVIL DIVISION

Ellen L. Delaine
5608-14th Street N.W.
Washington, D.C. 2001l
202-829-1745

vs.

United States

and  District of Columbia

and  Commonwealth of Virginia

and  Arlington, Virginia County

and  MWAA Airport Police
Serve: Edward Faggen, General Counsel
1 - Aviation Circle
Washington, D.C.

and  Arlington, VA. Dept. Of Human Services
Division Of Behavioral Healthcare
Emergency Mental Health Services
serve: Cynthia Kemp, Division Chief
1725 N. George Mason Drive
Arlington, VA. 22205

and  U.S. Park Police
serve: Cpt. Diana Smith, Commander
of Office Of Professional Responsibility
1100 Ohio Drive S.W.
Washington, D.C. 20024

FILED

NOV - 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CASE NUMBER  1:06CV01881

JUDGE: Unassigned

DECK TYPE: Civil Rights (non-employment)

DATE STAMP: 11/03/2006

and,  Sheryl E. Ellison
913 Decatur Street N.W.
Washington, D.C. 2001l

and  William S. Fralin
4585 Klingle Street N.W.
Washington, D.C. 20016

and  Thomas H. Delaine
P.O. Box 1074
Randallstown, MD 21133

and  Franklin P. Delaine
4579 South Dakota Avenue N.E.
Washington, D.C. 20017

**RECEIVED**

SEP 2 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

COMPLAINT
(see Attached)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

## Complaint

## MWAA Airport Police

(1)     On Wednesday, October 26, 2005 at approximately one O'clock A.m. at the location of the Ronald Reagan Washington National Airport, Plaintiff, Ellen L. Delaine, was using an assistive walker and carrying a portable roller cart, and about to exit from the third floor womens restroom when female Airport Police Officers Doomes and Poyner entered and for no probable cause or suspicion of any criminal activity asked Plaintiff if she had identification and Plaintiff answered, "No". By now, Airport Police Officer Lieutenant Milbrook had appeared in the open doorway entrance of the womens restroom and observed Officers Doomes and Poyner with Plaintiff and Officer Poyner told Lieutenant Milbrook that Plaintiff did not have identification. Lieutenant Milbrook stated to Plaintiff that identification is required in the state of Virginia. Officer Poyner then stated that they have to search Plaintiff and Officer Doomes asked "Why? she hasn't committed any crime". Officers Doomes and Poyner started searching Plaintiff's body, Plaintiff was not resisting. Officers Doomes and Poyner told Plaintiff to turn around and face the restroom sink whereby Plaintiff's back was facing them, and they began to violently and brutally twist Plaintiff's arms and improperly and unlawfully handcuffed Plaintiff and dragged Plaintiff out of the restroom, leaving behind her assistive walker and portable roller cart as Lieutenant Milbrook supervisedly observed. Plaintiff was injured and placed in the police vehicle with its front seat pushed back against Plaintiff's knees, causing further injury; and Plaintiff was transported to the Airport Police Precinct by Officers Doomes and Poyner. When Plaintiff arrived at the Airport Precinct, Lieutenant Milbrook was

1

already there and was joined by Officer Montgomery. Officer Doomes and Poyner began an unnecessary abusive search by continuously fondling Plaintiffs breasts, buttocks, and using as Officer Doomes called Plaintiff's lanterous, vulgar names of "stinking ass". Plaintiff was still in handcuffs and was kicked on the legs and feet, pushed and hit in the head several times during this brutal search in the presence of the other officers. After the search Plaintiff was placed in a holding cell still handcuffed and was suffering pain from her injuries. Lieutenant Milbrook, Officers Doomes, Poyner, and Montgomery then searched through Plaintiff's personal belongings that were on her portable roller cart which included Plaintiff's purse containing her state identification card, social security card, health insurance cards, passport, and other self identification cards which the officers recorded. Plaintiff also had notebooks containing U.S. Court legal documents of related cases that Plaintiff was involved in including legal documents of a related case that she was preparing at the airport before her arrest, which the officers searched through and invaded Plaintiff's privacy by reading out loudly the contents of the written information contained within these documents and publicly discussing with each other its contents contained within, which was of no legal concern to them.

   More than an hour had now passed since Plaintiff was placed in the holding cell and still suffering pain from her injuries when Officer Doomes asked Lieutenant Milbrook if she could remove Plaintiffs handcuffs and he replied, "No". Later, paramedics arrived to examine Plaintiff and she refused because she thought that she was soon to be released since the officers had already acquired her identification cards. Afterwards the officers told Plaintiff that a doctor

2.

would be coming to see her and shortly thereafter, Dr. Peter Frecknall of the Arlington, Virginia Department of Human Services (Division of Behavioral Healthcare / Emergency Mental Health Services, arrived and told Plaintiff that she was going to spend three to four days in a Mental Institution and he then began walking towards Plaintiff with his arms and hands raised, and Plaintiff, who was still in handcuffs, backed away from him and reacted to his assault. Officers Doomes and Joyner immediately became brutal and abusive and violently grabbed and hit Plaintiff and began pushing and hitting Plaintiff's head and face against the bars on the holding cell as they told Dr. Peter Frecknall to meet them at the Northern Virginia Hospital.

Again Officer Doomes tightened Plaintiff's handcuffs on her already swollen hands and Officer Montgomery placed Plaintiff in the police vehicle with the back of the front seat crushing Plaintiff's knees while Officers Doomes and Montgomery verbally abused Plaintiff during transport to the hospital. Once at the Northern Virginia Hospital Plaintiff was then handcuffed to a bed in a hospital room and the staff hospital doctor asked officer Doomes why Plaintiff was brought there. Officer Doomes intentionally falsely prosecuted Plaintiff by making a fraudulent statement with the knowledge of the falsity of her statement and told the hospital doctor that Plaintiff assaulted a police officer with a deadly weapon and that Plaintiff was a very dangerous person. Dr. Peter Frecknall and a nurse were in the hospital room and Dr. Frecknall instructed Officer Doomes to assist the nurses in drawing blood from Plaintiff whereby Officer Doomes tightened Plaintiff's handcuffs and then held Plaintiff down while the nurses drew blood from Plaintiff's veins under these conditions of her swollen handcuffed hands that were

Severely in pain. Afterwards a nurse administered an injection to Plaintiff who almost instantly fell asleep. Plaintiff awakened in a bed at the Snowden at Fredericksburg Center. On October 28, 2005 Plaintiff was informed that she was being transferred and for the first time saw the documents from the Commonwealth of Virginia Department of Mental Health, Mental Retardation And Substance Abuse, Petition, that stated Special Justice, George Dodge, declared Plaintiff mentally ill on October 26, 2005, and signed a Certification And Order for Involuntary Admission to the Northern Virginia Mental Health Institute in Falls Church, Virginia for a period not to exceed 180 days and stated that he observed Plaintiff who is in need of care and treatment in a hospital and had reviewed medical certifications and statement of facts upon which certifications are based and has found that Plaintiff has proved to be so seriously mentally ill as to be substantially unable to care for herself; and that alternatives to involuntary hospitalization and treatment were deemed unsuitable. On October 28, 2005 at appr. 11:30 AM Plaintiff was transported to the Northern Virginia Institute of Mental Health by a county sheriff and assistant, and Plaintiff remained until February 3, 2005, due to the intentional fraudulent petition signed by Judge George Dodge, Special Justice.

    Plaintiff's intentional unlawful arrest at the Airport was an asserted estoppel overt act in furtherance of a civil conspiracy and was done in malice in order to prevent Plaintiff from filing in court a related court document involving an injury to Plaintiff on the Washington Metropolitan Area Transit Authority Bus which was an asserted estoppel overt act in furtherance of a civil conspiracy to prevent Plaintiff from filing another related court document whereby she was also injured for the same reason on September 18, 2004, which also involves WMATA.

4

Plaintiff arrived at the Airport by means of WMATA trains who was a member participating in concerted actions in a civil conspiracy of invasion of Plaintiff's rights since 1999 and was invading Plaintiff's privacy by keeping her under surveillence while in their facilities and on their premeses and was wrongfully disclosing and publishing Plaintiff's private information to conspirator defendants, Sheryl E. Ellison; William S. Fralin; Franklin P. DeLaine; Thomas H. DeLaine; and United States, who knew the purpose of the conspiracy and agreed to become a party to a plan to effectuate that purpose; and participated as a member in concerted actions in this civil conspiracy of invasion of Plaintiff's rights. Defendant, WMATA Airport Police knew that Plaintiff was in the Airport and Plaintiff was under surveillence by means of unauthorized use of wire and electronic devices for audio and oral communications and Plaintiff's rights were violated and she was unlawfully arrested whereby she was injured.

On July 19, 2005 at approximately 11pm on the second floor of the Airport at the Delta/American Air Line Sections Plaintiff was seated at a table doing some writing when an Airport employee began hitting on the table where Plaintiff sat and demanding her to move. On another occasion on May 27, 2005 on the second floor level where Plaintiff was seated, a female adult intentionally intercepted Plaintiff to offend her by asking if Plaintiff were a lady and that she couldn't tell if Plaintiff were or not. Then she just stood in front of Plaintiff to intentionally intimidate and inflict emotional distress. Later she saw Plaintiff again and yelled "Where are you going". She obviously knew who and where Plaintiff was and was effecting the purpose of the conspiracy.

Plaintiff's complaint is a related case to a 2004 lawsuit that was filed in the Superior Court for

District of Columbia on April 6, 2004 and was removed to United States District Court for District of Columbia, Civil Action No. 04cv872, and was appealed, and other related cases have been filed in Superior Court and United States District Court for District of Columbia that also involves the same defendants and same subject matters of continual offenses and injuries that began in 1999, the beginning of the civil conspiracy, and are still in the process of being committed.

MWAA Airport Police violated Constitutional Torts U.S. Code Title 18-Crimes and Criminal Procedures, Ch. 13- Civil Rights, Section 245(2)(E)(F)-Federally protected Activities; Title 18, Ch. 19-Conspiracy, Sect. 371(2)(C)-Solicitation to commit a crime of violence; Title 18, Ch. 119-Selected Statutes on Electronic Surveillance and Wiretaps, Sect. 2511(1)- Interception and Disclosure of Wire or Oral Communications Prohibited. Other violations are intentional torts of assault, battery, false imprisonment, fraud, slander, libel, and emotional distress and invasion of privacy.

NVMHI - Northern Virginia Mental Health Institute
(2) A) On October 28, 2005 Plaintiff arrived at the location of the Northern Virginia Mental Health Institute at 3302 Gallows Road, Falls Church, Virginia, escorted by a County Sheriff and his assistant, and Plaintiff signed papers for her admittance. A social worker explained to Plaintiff the hospital procedures and that Plaintiff was to sign an agreement to take medication for Bipolar Disorder, which Plaintiff stated she doesn't suffer any mental illnesses and her involuntary commitment orders are fraudulent. Plaintiff did not sign the medication agreement. Later that day around 3 pm, Dr. Ramon, psychiatrist at the 7-unit where Plaintiff was housed, stated to Plaintiff that he was informed that she did not sign

6

the agreement to take Zyprexa medication for Bipolar Disorder and his conduct became outrageous and uncivilized and he displayed violent facial and bodily gestures as he shouted and threatened Plaintiff to either agree to sign the medicine authorization form or else his staff will force the medicine on her by holding her down three times daily and injecting Plaintiff. Plaintiff was threatened and signed the medicine agreement and suffered severe side effects from the Zyprexa medicine.

B.) On Monday, October 30, 2005 at approximately 11 AM, Plaintiff met with Dr. Ramon and his team who asked Plaintiff to explain how she became a patient. Plaintiff began to explain her unlawful arrest at the airport when Dr. Ramon's conduct became uncivilized and beyond decency and he started shouting at Plaintiff and intentionally falsely projected Plaintiff to his team and with the knowledge of the falsity of his statement told the team that Plaintiff has Bipolar Disorder and that Plaintiff was acting violently until she started taking the medication and now that Plaintiff is on the medication that her behavior is all right. The team members observed that Plaintiff was intimidated and humiliated and suffering emotional distress and they they looked at Dr. Ramon in disapproval of his conduct.

c.) Plaintiff met with Dr. O'Connor, the hospital primary care physician, and Plaintiff showed her injuries of the broken skin on her wrists from the tightened handcuffs and also explained that she was suffering numbness in her hands and severe shoulder pain along with neck, head, and back pain. Plaintiff was given pain medication and explained that she had an ongoing neck and back problem which Plaintiff had her MRI's faxed to Dr. O'Connor on his request and he stated that he wanted to update them. On December 2, 2005 a nurse informed Plaintiff that at 2 pm she was scheduled

7

to go for an MRI, and when Plaintiff arrived at the MRI Center she was informed that the MRI was to be of her brain, not the neck or back. Plaintiff took the Brain MRI but was not allowed at that time to see the doctors report. Only after Plaintiff was discharged on February 3, 2006 did she return to the MRI center to obtain her Brain MRI report to find out that Dr. O'Connor stated in Plaintiffs medical report that the Brain MRI was requested because Plaintiff had a medical history of psychosis, which was false.

D) On or about November 12, 2005 Plaintiff met with the team but Dr. Ramon was not present. The team expressed to Plaintiff their disapproval of Dr. Ramon's conduct towards her when we met on October 30, 2005, and they apologized for his conduct and stated that they wanted to take some action for his unprofessional conduct.

E.) On or about November 13, 2006 during the middle of the night while Plaintiff was asleep in her bed, a female was assigned to the unoccupied bed in Plaintiffs room. When Plaintiff awoke that morning she realized that the new patient was a female named Valerie Kathleen Larson who had prior assaulted and battered Plaintiff on September 9, 2004 at a facility called the New Hope Housing/Eleanor Kennedy Shelter in Fairfax, Virginia where Plaintiff had resided temporarily and that Plaintiff had a pending court case regarding her attack there. Plaintiff spoke to her social worker, Molly Schneur, and requested another room and explained why, and Plaintiff was transferred. Valerie Larson made it her business to come near Plaintiff whenever she saw Plaintiff in the TV room or in the yard during cigarette break and caused fear and emotional distress to Plaintiff which was reported to Molly Schneur. ... Plaintiff stated that she wanted a restraining order imposed but instead, Plaintiff was removed to another unit. Valerie Larson was intentionally placed in Plaintiffs room by staff.

8

F) On or about the first week of November, 2005 Plaintiff had shown social worker, Molly Schneur, her wrist injuries caused by the handcuffs when she was arrested at the airport and asked if Molly could take pictures of her injury which she stated that she could not. On or around the 11th of November, 2005 Plaintiff's family came to visit and had observed Plaintiff's wrist injuries but was refused by security in bringing in a camera to take pictures.

G) Around November 18, 2005 Plaintiff was transferred to the I-Unit and remained there for approximately two days. Plaintiff's social workers name was Jim or Tim I think, and Plaintiff stated that she was trying to get legal help to get discharged and so far was unsuccessful. Plaintiff had received a telephone call from Susan Stoney of legal aid and had received the message from her social worker. For no related reason, this social worker, Tim? or Jim? telephoned Plaintiff's mother to ask her an inappropriate question regarding Plaintiff, that had nothing to do with Plaintiff's condition or any reports regarding Plaintiff as a patient or anything related to the information in Plaintiff's chart. It was this first time that Plaintiff disclosed her mother's telephone number in case he could assist Susan Stoney of legal aid in getting Plaintiff discharged, and Tim used this opportunity to be unprofessional and did not honor the purpose why he was given the phone number.

F) On or about November 20, 2005 Plaintiff was transferred to the K-Unit with Dr. Mueller, the new psychiatrist temporarily filling in for the regular doctor away on leave. Dr. Mueller told Plaintiff that she was not allowed to take care of any personal matters such as access to xerox copies or sending certified mail because Plaintiff was in the hospital. He also stated that Valerie Keogh was the assigned social worker to assist but neither of them assisted Plaintiff with her needs.

9

61) Plaintiff told Valerie Keogh, her assigned social worker, that she needed a verification letter to be sent to the Courts regarding certain pending cases that Plaintiff was involved in and was inhibited from due to her involuntary commitment, Valerie never provided Plaintiff with that letter and fortunately on December 12, 2005, Plaintiffs discharge planner assisted with that. Plaintiff also asked Valerie Keogh if she would speak with Susan Stoney over the phone to help in getting discharged and to make an appointment for Susan Stoney to come to discuss the discharge and if she could help. Valerie never returned Susan Stoney of Legal Aid telephone call. On December 21, 2005 Plaintiff spoke with Susan Stoney at Legal Aid and was told that after she had informed Plaintiff that Legal Aid could not help, Valerie Keogh had mailed the personal information regarding Plaintiffs commitment to the hospital that Valerie was not authorized to do. Plaintiff spoke with Mr. Tim Simmons, Human Rights Officer of NVMHI, who stated that he would speak with Valerie about not assisting Plaintiffs needs, and for wrongfully disclosing Plaintiffs private information. Mr. Tim Simmons returned that same day to give the results of his conversation with Valerie Keogh, and stated that Valerie Keogh told him Plaintiff had a problem with her because her name is the same as the person who attacked Plaintiff at the Giant Food Store. Plaintiff told Mr. Simmons that she never spoke with anyone regarding her case with Giant Food Store that was pending in Court and again Valerie Keogh invaded Plaintiffs privacy by disclosing that private information. Valerie Keogh intentionally invaded Plaintiff's privacy by wrongfully disclosing and mailing plaintiffs private information regarding her involuntary committment orders which were fraudulent reports; and she was not authorized by the hospital nor Plaintiff to disclose that information, which was done in malice in order to falsely project Plaintiff.

D) On January 17, 2006 at 3:15pm Plaintiff met with the team of Dr. Diane Harris, Psychologist; Valerie Keogh, social worker; and Timothy Simmons, Human Rights Officer. Dr. Harris stated that the team wanted Plaintiff to concentrate more on her treatment and increase the number of classes to four classes daily, rather than the 2-3 classes Plaintiff was taking daily; and to focus less attention on the legal matters. Plaintiff was then asked by Dr. Harris how the Zyprexa Medication has benefited and Plaintiff stated that it hasn't benefited because she doesn't suffer from Bipolar Disorder and that Plaintiff has suffered severe side effects from taking the medication. Plaintiff stated that her commitment order is fraudulent and that there are no medical records that were legally obtained stating that Plaintiff was ever examined, diagnosed, or appeared before a Judge and was involuntarily committed for being mentally ill. Dr. Harris then stated that the team thinks that Plaintiff has mental disorders and also stated that she knew that for a period of time that Plaintiff did not talk to her family. Plaintiff requested to see her medical chart indicating what mental illness the team believes she has, and Plaintiff also knows that Dr. Harris nor anyone in the hospital ever spoke with Plaintiff's family to obtain that false information. Immediately following the meeting, Plaintiff spoke privately with Dr. Diane Harris who stated that Valerie Keogh violated Plaintiff's rights by wrongly disclosing private information to Susan Stoney of Legal Aid and by disclosing private information regarding Plaintiff's Court Case with Giant food store.

E) On Tuesday, January 24 2006 a technician entered Plaintiff's room to announce that Dr. Ala thari, Psychiatrist, who is returned to the unit, was here to see Plaintiff. Dr. Alathari asked Plaintiff if she had seizures and Plaintiff

11

state no. Dr. Ala thari stated that information is in Plaintiffs chart and Plaintiff stated that she is not surprised about what information may be in her chart.

I.) On Tuesday, January 31, 2006 Plaintiff met with the team including Valerie Keogh, social worker, nurse, Janet; Dr. Diane Harris; Dr. Alathari; Dr. Surman; and a male medical student. Dr. Surman asked Plaintiff to explain how Zyprexa benefited and why Plaintiff was still in the hospital and Plaintiff responded that she was here due to fraudulent reports and that Zyprexa did not benefit her because she does not have Bipolar Disorder and that she suffered severe side effects from its use. Plaintiff stated that she was never examined or diagnosed for mental disorders and that she never appeared before a judge George Dodge.

Plaintiffs rights were violated, Plaintiff was continuously under surveillance by means of unauthorized use of wire and electronic devices for audio and oral communication during her entire stay. Plaintiffs privacy was invaded and Plaintiff was falsely projected and the pictures and photographs were used to illustrate a certain type of story and Plaintiff was being used for commercial purposes without her consent. Plaintiff was slandered, assaulted, and that was intentionally done in order to intentionally inflict emotional distress. Plaintiffs medical records were fraudulent and a false representation a material fact. Plaintiff was forced to take medication for an illness she didn't have and suffered severe side effects as a result. Plaintiff was not properly treated for her physical medical problem and was denied obtaining evidence of her injuries from her unlawful arrest at the airport. Defendant, WMHF, was participating as a member in concerted actions in a civil conspiracy of

12.

invasion of Plaintiff's rights in a continuing intentional tort doctrine for a continuing intentional infliction of emotional distress, and overt acts in furtherance of the conspiracy whereby Plaintiff was injured. Plaintiff suffered physical harm, mental anguish and emotional distress, and damage was done to her character and reputation. Defendant, NVMHI participated as a member in concerted actions with defendants United States; District of Columbia; Commonwealth of Virginia; Sheriff E. Ellison; William S. Fralin; Thomas H. Delanie; Franklin P. Delanie; MWAA Airport Police; and the County of Arlington, Virginia, who knew the purpose of the conspiracy and agreed to become a party to effectuate that purpose.

This Complaint is a related case to Plaintiff's 2004 lawsuit that was filed in the Superior Court for the District of Columbia on April 6, 2004, and was removed to United States District Court for the District of Columbia, and was appealed in the United States Court of Appeal for the District of Columbia; and since then Plaintiff has filed additional cases of continuing off enses and injuries in the Superior Court for the District of Columbia and the United States District Court for the District of Columbia involving the same defendants and same subject matters of a civil conspiracy of invasion of rights in a continuing intentional tort doctrine for a continuing intentional inflicting emotional distress that began in 1999 and the offenses and injuries are still in the process of being committed.

Defendant, NVMHI, violated Constitutional Torts U.S. Code, Title 18, Chapter 19-Conspiracy,

13

Sect's 371, 373(G)(C); Title 18, Ch. 119 - Selected Statutes on Electronic Surveillance And Wiretaps, Sect. 2511(1). Defendant, NVMHI also violated Intentional Torts of assault, false imprisonment, fraud, slander, libel, emotional distress, invasion of privacy, and intentional negligence.

(3) U.S. Park Police

On August 15, 2005 at approximately 9:30 PM Plaintiff was departing the S1-or S2- 16th and Colorado Avenue Washington Metropolitan Area Transit Authority Bus at the location 16th Street N.W. at the intersection of Colorado Avenue N.W., and was using an assistive walker device and carrying a portable roller cart. Plaintiff entered Rock Creek Park to use the restroom on Lot 29. As Plaintiff was exiting the restroom a Park Police Officer was walking towards her with a flash light shining in her direction when he ordered Plaintiff to stop. The Park Police Officer informed Plaintiff that an alarm had gone off in the tennis Center and Plaintiff stated that she knew nothing about that. The officer's conduct became violent, outrageous, and uncivilized beyond decency when he began to kick and step on the bags on Plaintiff's roller cart and then pulled out his nightstick or a similar device, and grabbed Plaintiff's assistive walker device and threw it against the fence surrounding the tennis Court. Then he grabbed Plaintiff's portable roller cart and threw it on the ground and pushed Plaintiff on the ground and stood over her with his arms raised and holding his nightstick in his hand. Plaintiff began screaming for help and continued to scream for help until three or four Park Police vehicles arrived. Plaintiff explained

14

to the Park Police Officer, who arrived in their vehicle that she was assaulted and battered by by the Park Police Officer who was there when they arrived, and Plaintiff requested an ambulance and stated that she was injured.

At least 30 minutes had passed before an ambulance was called and a fire department truck, #24, arrived. Plaintiff was still seated on the ground when fire department technician, Mr. Neeley, stood over Plaintiff and kicked her on her foot twice in the presence of the other officers. Plaintiff again requested an ambulance when one finally arrived and Plaintiff was removed from the scene of the crime. Plaintiff asked the ambulance driver to take her to a specific hospital which they agreed to but instead took Plaintiff to another hospital. Plaintiff was still in the ambulance when the female Emergency Medical Supervisor came to the ambulance where Plaintiff was and immediately said that nothing was wrong with Plaintiff. Plaintiff refused to go inside of this hospital and the female Emergency Medical Services Supervisor instructed the ambulance technicians to take Plaintiff to the hospital of her choice, which they said that they would, but instead brought Plaintiff to another hospital and just left Plaintiff there. Plaintiff had to call for another ambulance who transported her to her requested hospital.

U.S. Park Police has been been participating as a member in concerted actions in a civil conspiracy of invasion of Plaintiffs rights in a Continuing Intentional Tort Doctrine for a Continuing Intentional Infliction of Emotional Distress with named conspirator defendants, United States; District Of Columbia; Sheryl F. Ellison; William S. Frahn; Franklin P. Delanie; and Thomas H. Delanie, who knew the purpose of the conspiracy and agreed to become a party to a plan to effectuate that purpose, and were involved in the planning or commission or a w attempt

15

or solicitation to commit such crime.

U.S. Park Police violated Plaintiff's rights by keeping her under surveillence while on their premesis and facilities by means of unauthorized use of wire and electronic devices for audio and oral communication; her privacy was invaded and her private facts were wrongfully disclosed and published. She was falsely portrayed and the pictures and photographs of her illustrate a certain type of story; and Plaintiff was being used for commercial purposes without her consent.

Plaintiff's Complaint is a related case to her 2004 lawsuit that was filed in the Superior Court for the District Of Columbia on April 6, 2004 and involves the same defendants and same subject matters. Plaintiff alleged therein her 2004 lawsuit that the U.S. Park Police were participating as members in concerted actions in a civil conspiracy of her rights violations since 1999 and that the offenses and injuries were continual. Plaintiff's 2004 lawsuit was removed to United States District Court for the District of Columbia, Civil action number 04-872, Whereby Plaintiff gave additional evidence of new facts and findings of offenses and injuries by U.S. Park Police. Plaintiff appealed her case in the United States Court Of Appeals for District of Columbia and gave further evidence of additional continual offenses by the U.S. Park Police in her "Relief from Judgment Motion" filed on September 23, 2005, appeal number 04-5420, which includes her assault and battery attack on August 15, 2005 by the U.S. Park Police, whereby she was injured. Plaintiff also included therein additional evidence of continual offenses and injuries by U.S. Park Police. Plaintiff has since then filed additional complaints of related cases

16

of intentional continual offenses and overt acts in furtherance of the conspiracy whereby Plaintiff was injured.

U.S. Park Police violated Constitutional Torts U.S. Code Title 18, Ch. 13-Civil Rights, Sect. 245 (2)(6)(1)(B); Title 18, Ch. 19- Conspiracy, Sect. 373 (a)(c); Title 18, Ch. 119- Selected Statues on Electronic Surveillance and Wiretaps, Sect. 2511(1). Also violations of intentional torts of assault, battery, false imprisonment, emotional distress, and invasion of privacy.

Plaintiff continues to suffer offenses and injuries from a civil conspiracy of invasion of rights in a continuing intentional tort doctrine for a continuing intentional infliction of emotional distress.

Plaintiff is suing defendant, United States, for punitive damages for Constitutional torts, civil conspiracy terrorism, false imprisonment, assault, battery, fraud, emotional distress, defamation, invasion of privacy, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, United States, for punitive damages in the sum with interests and costs of:                    $ 50,000,000. ⁰⁰

Plaintiff is suing defendant, United States, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, United States, for compensatory damages in the sum with interests and costs of:                    $ 50,000,000. ⁰⁰

17

Plaintiff is suing defendant, District of Columbia, for punitive damages for Constitutional torts, civil conspiracy, terrorism, false imprisonment, assault, battery, fraud, emotional distress, defamation, invasion of privacy, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, District of Columbia, for punitive damages in the sum with interests and costs of: $ 50,000,000.00

Plaintiff is suing defendant, District of Columbia, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, District of Columbia, for compensatory damages in the sum with interests and costs of: $ 50,000,000.00

Plaintiff is suing defendant, Commonwealth of Virginia, for punitive damages for Constitutional torts, civil conspiracy, terrorism, false imprisonment, assault, battery, fraud, emotional distress, defamation, invasion of privacy, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, Commonwealth of Virginia, for punitive damages in the sum with interests and costs of: $ 12,500,000.00

Plaintiff is suing defendant, Commonwealth of Virginia, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, Commonwealth of Virginia, for compensatory damages in the sum with interests and costs of: $ 12,500,000.00

Plaintiff is suing defendant, Arlington County, for punitive damages for Constitutional Torts, civil conspiracy, false imprisonment, assault, battery, fraud, terrorism, emotional distress, defamation, invasion of privacy, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, Arlington County, for punitive damages in the sum with interest and costs of: $ 12,500,000.00

Plaintiff is suing defendant, Arlington County, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, Arlington County, for compensatory damages in the sum with interest and costs of: $ 12,500,000.00

Plaintiff is suing defendant, MWAA Airport Police, for punitive damages for Constitutional Torts, civil conspiracy false imprisonment, assault, battery, fraud, terrorism, emotional distress, defamation, invasion of privacy, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, MWAA Airport Police, for punitive damages in the sum with interest and costs of: $ 25,000,000.00

Plaintiff is suing defendant, MWAA Airport Police, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, MWAA Airport Police,

19

for compensatory damages in the sum with interest and costs of: $ 25,000,000.00

Plaintiff is suing defendant, Arlington, VA. Department Of Human Services, for punitive damages for constitutional torts, civil conspiracy, false imprisonment, assault, battery, fraud, emotional distress, defamation, invasion of privacy, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, Arlington, VA. Department Of Human Services, for punitive damages in the sum with interest and costs of: $ 30,000,000.00

Plaintiff is suing defendant, Arlington, VA. Department Of Human Services, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, Arlington, VA. Department Of Human Services, for compensatory Damages in the sum with interest and costs of: $ 30,000,000.00

Plaintiff is suing defendant, United States Park Police, for punitive damages for constitutional torts, civil conspiracy, false imprisonment, assault, battery, emotional distress, invasion of privacy, terrorism, as they carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, United States Park Police, for punitive damages in the sum with interest and costs of: $ 30,000,000.00

Plaintiff is suing defendant, United States Park Police,

20

for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, United States Park Police, for compensatory damages in the sum with interest and costs of:                                     $ 30,000,000.⁰⁰

Plaintiff is suing defendant, Sheryl E. Ellison. for punitive damages for conspiracy to Constitutional Torts; terrorism; false imprisonment; assault; battery; fraud; emotional distress; defamation; invasion of privacy; as she carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against, defendant, Sheryl E. Ellison, for punitive damages in the sum with interest and costs of:                     $ 10,000,000.⁰⁰

Plaintiff is suing defendant, Sheryl E. Ellison for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, Sheryl E. Ellison, for compensatory damages in the sum with interest and costs of: $ 10,000,000.⁰⁰

Plaintiff is suing defendant, William S. Fralin, for punitive damages for conspiracy to Constitutional Torts; terrorism; false imprisonment; assault; battery; fraud; emotional distress; defamation; invasion of privacy; as he carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, William S. Fralin, for punitive damages in the sum

21

with interest and costs of:          $ 10,000,000.00

Plaintiff is suing defendant, Thomas H. Delaine, for punitive damages for conspiracy; participating as a member in concerted actions in a civil conspiracy of invasion of rights in a continuing intentional tort doctrine for a continuing intentional infliction of emotional distress; as he carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, Thomas H. Delaine, in the sum with interests and costs of:          $ 10,000,000.00

Plaintiff is suing defendant, Thomas H. Delaine, for compensatory damages for discomforts due to pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, Thomas H. Delaine, for compensatory damages in the sum with interests and costs of:          $ 10,000,000.00

Plaintiff is suing defendant, Franklin P. Delaine, for punitive damages for conspiracy; participating as a member in concerted actions in a civil conspiracy of invasion of rights in a continuing intentional tort doctrine for a continuing intentional infliction of emotional distress, as he carried out this reckless misconduct for over a period of time that resulted in a measurable loss to Plaintiff. Plaintiff seeks judgment against defendant, Franklin P. Delaine, in the sum with interests and costs of:          $ 10,000,000.00.

Plaintiff is suing defendant, Franklin P. Delaine for compensatory damages for discomforts due to pain and

23

suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, Franklin P. Delanie, for compensatory damages in the sum with interests and costs of: $ 10,000,000.00

Plaintiff is suing defendant, William S. Fralin, for compensatory damages for medical bills, pain and suffering, physical harm, emotional distress, mental anguish, and damage done to reputation and character. Plaintiff seeks judgment against defendant, William S. Fralin, for compensatory damages in the sum with interests and costs of: $ 10,000,000.00

Plaintiff seeks total judgment for compensatory damages in the sum with interests and costs of: $ 250,000,000.00

Plaintiff seeks total judgment for punitive damages in the sum with interests and costs of: $ 250,000,000.00

Total Judgment Amount: $ 500,000,000.00

Respectfully submitted,

Ellen L. Delanie

Ellen L. Delanie
56-08-14th Street N.W.
Washington, D.C. 20011
202-829-1745

23